## STATE v. PICCOTT.

Circuit Court, Dade County.

November 7 and 13, 1957.

Richard E. Gerstein, State Attorney, for the state.

Mark O'Quin, Miami, for the defendant.

Albert B. Bernstein, Miami, for the respondent Ben Silver.

William C. Steel, Scott, McCarthy, Preston, Steel & Gilleland, Miami, for the respondent Robert Brumfield.

VINCENT C. GIBLIN, Circuit Judge.

*November 7, 1957:* The defendant is to be arraigned before me in open court today at noon in the courtroom in which I shall then be presiding.

The experiences of a fellow judge in another case impel me to enter this order, in the exercise of the court's inherent power, for the purpose of insuring that the proceedings before me in this case shall be conducted in an atmosphere of dignity and decorum and with due regard for the rights and privileges of the accused.

It is ordered that no photographs or pictures shall be taken during the proceedings before me in this case in the courtroom or at any place within thirty feet of any entrance to the courtroom; and that the accused shall not be photographed in the jail preceding his arraignment, or on his way to or from the court session during which he is to be arraigned, or in the courtroom. The accused has specifically objected to being so photographed.

I have no wish to engage in controversy with photographers or cameramen who desire to procure for publication in the press or by television, photographs or pictures taken in, or in the vicinity of, the courtroom, but I do not intend that my judicial discretion shall be subordinated to their understandable desires. A violation by any photographer or cameraman who shall have notice of this order or any of its provisions shall, therefore, be deemed and treated as contempt of this court; and, should any prohibited photograph or picture be taken by any photographer or cameraman before he shall have notice of this order, he shall, on being advised of it, immediately surrender the photograph or picture to the clerk of this court and such photograph or picture shall not be published in the press or by television.

The sheriff of Dade County and his deputies (including the court bailiff), are authorized and required to enforce and effectuate this order, but in doing so shall not employ any force or violence

and shall not destroy or damage any camera or photographic equipment. Any person or persons who shall violate any provision of this order shall, however, be brought immediately before me in open court for appropriate judicial action.

The sheriff and his deputies (including the bailiff) shall give notice, in the most practicable manner, to all photographers and cameramen who shall be found in or near the courtroom in which the defendant is to be arraigned.

Ordered in open court in the courthouse of Dade County, Florida, at Miami, November 7, 1957.

*In a separate proceeding "In the Matter of Attachment for Contempt of Ben Silver," November 13, 1957:* This court, on November 7, 1957, in that certain case in which the state of Florida is the plaintiff and Howard B. Piccott is the defendant, and in which such defendant is charged (in an indictment returned by the grand jury) with the capital offense of rape, made and entered in open court a certain order, a certified copy of which is now made a part of the record of this matter.

The mentioned order was made and entered, in the exercise of the court's inherent power, for the purpose of insuring that the arraignment proceedings in the mentioned criminal case should be conducted in an atmosphere of dignity and decorum and with due regard for the rights and privileges of the accused prisoner.

It was ordered that no photographs or pictures should be taken, during the arraignment proceedings, in the court room, or at any place within thirty feet of any entrance to the court room in which such proceedings were to be conducted; and that the accused prisoner (who was in the custody of the executive officer of the court, the sheriff of Dade County) should not be photographed in the jail preceding his arraignment, or on his way to or from the court session during which he was to be arraigned, or in the court room.

It was specifically stated in the order that a violation of any of its provisions by any photographer or cameraman who should have notice of the order would be deemed and treated as contempt of the court.

The sheriff, his deputies and the court bailiff were authorized and required to enforce and effectuate the order and to bring before me for appropriate judicial action any person or persons who should violate any provision of the order; and such officers were directed to give notice, in the most practicable manner, to all pho-

tographers and cameramen who should be found in or near the court room.

During the arraignment proceedings on November 7, 1957, in the mentioned criminal case, deputies of the sheriff and the bailiff, in obedience to the commands and requirements of the mentioned order, brought before me for appropriate judicial action, Ben Silver, a cameraman.

The colloquy between the court and such cameraman was stenographically recorded and a transcript of such colloquy (furnished by the court reporter who recorded it) is now made a part of the record of this matter. Such transcript (with minor corrections made by me) accurately reflects the colloquy. It was as follows—

The Court: What is your name?

Mr. Silver: Ben Silver.

What is your business or occupation? — I am a newsman.

For whom do you work? — WCKT.

Are you a cameraman? — I take pictures; that's right.

Were you apprised of this order, a certified copy of which I now hand you, before you took the pictures? — Yes.

You were conscious of the fact that in taking the pictures you violated the court's order? — Yes, your honor.

Where did you take the pictures? — On the nineteenth floor.

That is a picture of the defendant, Howard B. Piccott, in this case? — That's correct.

Have you been advised by counsel or by your employer that you have the legal right to take such pictures despite such an order as this? — My employer advised me, after conferring with counsel, to take the pictures.

Despite the fact that the court entered the order? — That's right.

Did you apprise your employer and counsel of the provisions of the order? — I told my employer, who in turn told counsel.

So they knew all about the order when they gave you the instructions to take pictures? — Yes, your honor.

Who is your immediate superior from whom you received these instructions? — Gene Strul.

What position does he occupy with the television station? — News director.

Now, Mr. Silver, as I stated in this order, I have no desire to enter into any controversy, or any undignified controversy, concerning this matter; but I do intend to exercise the inherent power of this court to insure that the proceedings in this court, while I am presiding, shall

be conducted in an atmosphere of dignity and decorum, and I am of the opinion that taking a photograph or picture such as is prohibited by my order detracts from the dignity and decorum of judicial proceedings, and, for the reason that the defendant expressly objected to the taking of his photograph, I entered this order. Now, you, as I understand it, admit that you have purposely violated the court's order. I am inclined to think that, because of advice given you, you have done so for the purpose of testing the legal question involved. — Sir, if I may — I was assigned to take those pictures.

But you, personally, knew that I had ordered that you not take them. —That's correct.

Do you desire counsel? — Yes.

Well, I'll order you, then, to appear before me again at noon Wednesday of next week. I am as anxious as your employers probably are to have this legal question decided once and for all so that we shall not have any further difficulties such as were experienced by one of my fellow judges, who, incidentally, I think is one of the finest judges in America, and who has been, in my opinion, subjected to unjustified attacks by both press and television because of his attitude. He may have made a mistake in his efforts to enforce his order, but, in so far as his order is concerned, it was well within his discretionary power to prohibit the photographs that he sought to prohibit. But I don't want to wage his fight, but only the court's fight; that is, my division of the court. These photographs should not be taken. If an appellate court should disagree with me, I will follow and obey the mandates of the appellate court; but, until it is so decided, I intend to enforce such orders as this. And I intend to enforce this one if I can. But I do not want, at this time, to adjudge you in contempt of this court without your having the opportunity to consult counsel, to get his advice, and to interpose such defense as you wish to interpose. Your counsel may be able to convince me I am wrong. So you will agree, then, to be back before me at noon next Wednesday? — Yes, sir.

In the court room in which I shall be presiding? — Yes, sir.

Today, at noon, the cameraman, Ben Silver, again appeared before the court, as he had agreed to do; and he was accompanied and represented by counsel; and, in open court, he was accorded by the court the opportunity to show good cause, if he could, why he should not be adjudged guilty of, and punished for, direct contempt of this court because of his deliberate and wilful violation of the provision of the mentioned order of November 7, 1957, by which the photographing of the accused prisoner, Howard B. Piccott, in the jail preceding his arraignment, or on his way to the court session during which he was to be arraigned, was prohibited. Mr. Silver, however, through counsel, filed before the court a written motion by which a continuance was sought for the purpose of affording his counsel adequate time for the preparation and presentation of such defense or defenses as he may have. The motion was granted and it is accordingly ordered that he be before this

court and the undersigned judge, in the courthouse of Dade County, at Miami, and in the court room in which the undersigned judge shall then be presiding, on Friday, November 22, 1957, at two o'clock in the afternoon, and that at such place and time he show good cause, if he can, why he should not be adjudged guilty of, and punished for, direct contempt of this court because of his deliberate and wilful violation of the provision of the mentioned order of November 7, 1957, by which the photographing of the accused prisoner, Howard B. Piccott, in the jail preceding his arraignment, or on his way to the court session during which he was to be arraigned, was prohibited.

Ordered in open court in the courthouse of Dade County, Florida, at Miami, November 13, 1957 (in the presence of Mr. Silver and his counsel).

*In a separate proceeding "In the Matter of Attachment for Contempt of Robert Brumfield," November 13, 1957:* This court, on November 7, 1957, in that certain case in which the State of Florida is the plaintiff and Howard B. Piccott is the defendant, and in which such defendant is charged (in an indictment returned by the grand jury) with the capital offense of rape, made and entered in open court a certain order, a certified copy of which is now made a part of the record of this matter.

The mentioned order was made and entered, in the exercise of the court's inherent power, for the purpose of insuring that the arraignment proceedings in the mentioned criminal case should be conducted in an atmosphere of dignity and decorum and with due regard for the rights and privileges of the accused prisoner.

It was ordered that no photographs or pictures should be taken, during the arraignment proceedings, in the court room, or at any place within thirty feet of any entrance to the court room in which such proceedings were to be conducted; and that the accused prisoner (who was in the custody of the executive officer of the court, the sheriff of Dade County) should not be photographed in the jail preceding his arraignment, or on his way to or from the court session during which he was to be arraigned, or in the court room.

It was specifically stated in the order that a violation of any of its provisions by any photographer or cameraman who should have notice of the order would be deemed and treated as contempt of the court.

The sheriff, his deputies and the court bailiff were authorized and required to enforce and effectuate the order and to bring before me for appropriate judicial action any person or persons who

should violate any provision of the order; and such officers were directed to give notice, in the most practicable manner, to all photographers and cameramen who should be found in or near the court room.

During the arraignment proceedings on November 7, 1957, in the mentioned criminal case, deputies of the sheriff and the bailiff, in obedience to the commands and requirements of the mentioned order, brought before me for appropriate judicial action, Robert Brumfield, a cameraman.

The colloquy between the court and such cameraman was stenographically recorded and a transcript of such colloquy (furnished by the court reporter who recorded it) is now made a part of the record of this matter. Such transcript (with minor corrections made by me) accurately reflects the colloquy. It was as follows—

The Court: What is your name?

Mr. Brumfield: Robert Brumfield.

What is your business or occupation? — I am a news reporter.

For whom? — WTVJ.

Do you take photographs? — Yes, sir.

Did you take any today of the defendant in this case? — Yes sir.

Howard B. Piccott? — Yes, sir.

Where did you take them? — In the hallway, outside the court.

While the accused was on his way to the court room? — Yes, sir.

You knew the court's order? — Yes, sir.

You knew that when you took the pictures you were violating the court's order? — I knew I was violating what is written in that statement; yes, sir.

You question this court's authority to make such an order? — No, sir. I don't know. I am not a lawyer.

You have been advised that the court does not have the right to prohibit such pictures? — No, sir.

You haven't been so advised? — No, sir.

You personally just violated it? — Yes, sir.

Mr. Brumfield, do you desire counsel? — Yes, sir.

You have admitted, as I understand it, a purposeful violation of the court's order? — Your Honor, I took pictures in the hallway. That is what I admitted.

You were one who refused to relinquish the pictures? — No, sir; I didn't refuse anything.

Did you take pictures of the defendant? — Yes, sir.

Well, you violated the court's order then? — Yes, sir.

You knew you were violating — Well, you knew that I had signed the paper; didn't you? — Yes, sir.

And in that paper I said that no photographs will be taken of the defendant in jail or on his way to and from this court session or in the courtroom; you knew that? — Yes, sir.

Well, I will ask you to return. Do you agree to return next Wednesday? — Yes, sir.

You want counsel, too? An opportunity to be heard? — Yes, sir.

Today, at noon, the cameraman, Robert Brumfield, again appeared before the court, as he had agreed to do; and he was accompanied and represented by counsel; and, in open court, he was accorded by the court the opportunity to show good cause, if he could, why he should not be adjudged guilty of, and punished for, direct contempt of this court because of his deliberate and wilful violation of the provision of the mentioned order of November 7, 1957, by which the photographing of the accused prisoner, Howard B. Piccott, in the jail preceding his arraignment, or on his way to the court session during which he was to be arraigned, was prohibited. Mr. Brumfield, however, through counsel, filed before the court a written motion by which a continuance was sought for the purpose of affording his counsel adequate time for the preparation and presentation of such defense or defenses as he may have. The motion was granted and it is accordingly ordered that he be before this court and the undersigned judge, in the courthouse of Dade County, at Miami, and in the court room in which the undersigned judge shall then be presiding, on Friday, November 22, 1957, at two o'clock in the afternoon, and that at such place and time he show good cause, if he can, why he should not be adjudged guilty of, and punished for, direct contempt of this court because of his deliberate and wilful violation of the provision of the mentioned order of November 7, 1957, by which the photographing of the accused prisoner, Howard B. Piccott, in the jail preceding his arraignment, or on his way to the court session during which he was to be arraigned, was prohibited.

Ordered in open court in the courthouse of Dade County, Florida, at Miami, November 13, 1957 (in the presence of Mr. Brumfield and his counsel).